# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| MALCOLM MUHAMMAD, | ) | |
|     Plaintiff, | ) | Civil Case No. 7:10cv00395 |
| | ) | |
| v. | ) | |
| | ) | |
| GENE M. JOHNSON, *et al.*, | ) | By: Robert S. Ballou |
|     Defendants. | ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Malcolm Muhammad, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. Muhammad alleges that the defendants failed to protect him from violence at the hands of another inmate, denied him free exercise of religion by denying him large-group religious services and access to a religious newspaper, and denied him equal protection. By previous order, the court referred all dispositive motions to the undersigned for proposed findings of fact and a recommended disposition of the case, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned finds that Muhammad's allegations that defendants Johnson, Watson, Harvey, Combs, and Collins failed to protect him do not establish a constitutional violation and, therefore, **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED in part** as to that claim against those defendants. The undersigned also finds that issues of material fact exist as to Muhammad's claim that defendants Cochrane, Greer, Cheeks, and Fusion failed to protect him and, therefore, **RECOMMENDS** that defendants' motion for summary judgment be **DENIED in part** as to that claim against those defendants, and that this matter be set for a jury trial as to that claim. Finally, the undersigned finds that Muhammad's allegations regarding violations of his rights to free exercise of religion

and equal protection do not establish a constitutional violation and, therefore, **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED in part** as to those claims.

## I.

Muhammad, a Virginia Department of Corrections ("VDOC") inmate incarcerated at Wallens Ridge State Prison ("WRSP"), alleges that the defendants failed to protect him from violence at the hands of another inmate, denied him free exercise of religion by denying him large-group religious services and access to a religious newspaper, and denied him equal protection.[1] Muhammad seeks various injunctive relief as well as compensatory and punitive damages.

*Failure to Protect Claim*

Muhammad alleges that on November 5, 2009, his cellmate, inmate Woodfolk, started threatening and bullying him. Muhammad states that on the morning of Tuesday, November 10, 2009, he reported the issue to defendant Sgt. Cochrane. Muhammad alleges that he told Cochrane that he was being threatened with bodily harmby Woodfolk and that he needed to be moved away from him. Cochrane allegedly told Muhammad that there was nothing he could do about it because Lt. Collins would need to deal with it but was not currently available.

---

[1] Muhammad also files a motion to amend his complaint, see Docket No. 36, in which he seeks to add an additional claim that the defendants violated his rights by opening his legal mail outside of his presence on two occasions. The undersigned finds that Muhammad's allegations fail to state a claim of constitutional magnitude and, therefore, allowing him to amend would be futile.

Isolated incidents of mail mishandling, while not to be condoned, do not rise to the level of a constitutional violation. See Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) (holding that isolated, inadvertent instances of legal mail being opened outside of an inmate's presence are not actionable); Pearson v. Simms, 345 F. Supp. 2d 515, 519 (D. Md. 2003) (aff'd, 88 F. App'x 639 (4th Cir. 2004)) (holding that "occasional incidents of delay or non-delivery of mail" are not actionable under § 1983); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (noting that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."); Bryant v. Winston, 750 F. Supp. 733, 734 (E.D. Va. 1990) (holding that an isolated incident of mail mishandling, which is not part of any pattern or practice, is not actionable under § 1983). In his motion to amend, Muhammad alleges that on two occasions approximately one year ago, the defendants opened his legal mail outside of his presence. The undersigned finds that these two isolated incidents do not rise to the level of a constitutional violation. Accordingly, the undersigned finds that amendment to Muhammad's complaint to add this claim would be futile and, therefore, **RECOMMENDS** that Muhammad's motion (Docket No. 36) be **DENIED**.

2

Muhammad claims that he went back to his cell that same day and wrote to Collins, asking for assistance with the problem.

On Friday, November 13, 2009, Muhammad advised Sgt. Greer that Woodfolk was threatening to do Muhammad bodily harm and that he needed Greer to assist him because he did not want to "lose his job" or "get into trouble." Greer allegedly told Muhammad to write everything down to have it on the record when Lt. Collins returned to the facility on Monday. Muhammad states that he wrote everything down that same day and gave a copy to Greer.

On Saturday, November 14, 2009, after Woodfolk continued to threaten him, Muhammad claims that he submitted an emergency grievance to Officer Cheeks. Muhammad states that Cheeks reviewed the form and told Muhammad that it was too late to deal with the issue that day as he was getting ready to go home, but that Muhammad should speak to him in the morning concerning the issue.

On Sunday, November 15, 2009, Muhammad alleges that he told Officer Fusion that he needed Fusion to call Lt. Collins because Woodfolk continued to threaten him and Muhammad did not want to get into trouble. Muhammad alleges that Fusion told him that there was nothing that he could do about the issue until Collins returned on Monday. Shortly thereafter, upon returning to his cell from the showers, Muhammad claims that Woodfolk assaulted Muhammad by pushing him into the steel bed. Muhammad "split" his forehead when it hit the bed and the two inmates continued to fight until Fusion came into the cell and used OC spray on both inmates. Both Muhammad and Woodfolk were then taken to the medical unit where Muhammad states that he received stitches for the laceration on his forehead. Muhammad maintains that he now has a permanent scar on his forehead from the incident.

3

*Freedom of Religious Exercise and Equal Protection Claims - NOI Services*

Muhammad states that when he arrived at Wallens Ridge State Prison on April 25, 2009, there was no religious "program" for the inmates belonging to the Nation of Islam ("NOI"). At his previous institution, Muhammad was the spokesperson for the NOI inmates. Muhammad alleges that when he asked Warden Watson and Assistant Warden Harvey why there was no program, they informed him that there had previously been a program for the NOI inmates, but that the class was discontinued because some inmates were engaging in gang-related activity during the classes. Muhammad continued corresponding with Watson and Harvey on this issue and promised them that if they allowed him to lead a NOI class, he would make sure there would not be any disrespect to the institution or staff members. On December 4, 2009, Muhammad was allowed to hold a NOI large-group service in the gym. These large group services continued until February 12, 2010, when the institution determined that gang activities were occurring during the meetings and, therefore, discontinued the meetings in the interests of safety and security. Defendants allege that an investigation revealed that NOI religious services that were being conducted in the gym were actually gang meetings. In addition, defendants state that documents that were confiscated from the NOI large-group services indicate that gang activities were taking place during the group meetings. Muhammad argues that no gang activities occurred during the large group meetings because NOI members would not allow it to happen; however, he concedes that some inmates were giving each other gang hand signs before and after the meetings. Defendants state, and Muhammad concedes, that if NOI inmates want to have meetings, they can do so in smaller groups in their pods. Muhammad argues that that the defendants are "discriminating" against NOI inmates because all other religious groups are

4

allowed to hold large-group meetings in the gym in addition to the smaller group meetings in their pods.

*Freedom of Religious Exercise Claim- Newspaper*

Muhammad alleges that he ordered 24 issues of The Final Call newspaper[2] and that the first 10 issues were denied to him by the Publication Review Committee because they were determined to be "gang related" and, therefore, a security threat. Muhammad argues that at his previous institution, he was allowed to receive those newspapers. After the first 10 issues were rejected, Muhammad called the publisher and cancelled his subscription.

## II. Failure to Protect

Muhammad alleges that defendants Johnson, Watson, Harvey, Combs, Collins, Cochrane, Greer, Cheeks, and Fusion failed to protect him from violence at the hands of another inmate. The undersigned finds that Muhammad has not alleged or demonstrated that defendants Johnson, Watson, Harvey, Combs, and Collins were deliberately indifferent to his substantial risk of serious harm and, therefore, recommends that Muhammad's claims against those defendants be dismissed. However, the undersigned also finds that disputes of material facts exist as to Muhammad's claim against defendants Cochrane, Greer, Cheeks, and Fusion and, therefore, recommends that Muhammad's claims against these defendants be set for a jury trial.

The Eighth Amendment's Cruel and Unusual Punishment Clause imposes upon prison officials the duty to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). This duty requires prison officials "to protect prisoners from violence at the hands of other prisoners." Id. at 833 (citation omitted). To establish a claim for failure to protect from

---

[2] The Final Call newspaper is the official "communications organ" of the Nation of Islam. About Us, http://www.finalcall.com/artman/publish/aboutus/aboutus.shtml (last visited Dec. 14, 2011).

5

violence, an inmate must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison officials had a "sufficiently culpable state of mind." Id. at 834 (internal citations and quotations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. (internal citations omitted).

Deliberate indifference has both a subjective and an objective component. To be deliberately indifferent, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." Id. at 837. In a failure-to-protect case, the plaintiff must introduce evidence tending to show that the prison officials were aware of a specific, impending, and substantial threat to his safety. Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996).

To satisfy the objective prong of a failure to protect claim, a plaintiff must allege "not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005). A beating suffered at the hands of a fellow inmate can constitute serious harm. Id. And while the substantial risk standard is very high, it is not insurmountable. Id. at 911. It can be met by showing that a guard had knowledge that a particular inmate posed a heightened risk of assault to the plaintiff. Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000).

To satisfy the subjective prong of a failure to protect claim, a plaintiff must establish that the defendant was deliberately indifferent to that substantial risk of serious harm. Brown, 398 F.3d at 913. "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer, 511 U.S. at 838).

6

Typically, such a claim asserts that a defendant failed to take protective action after a plaintiff complained of a feared threat posed by rival gang members or a specific person. Id. at 914.

In this case, Muhammad alleges that he advised defendants Cochrane, Greer, Cheeks, and Fusion that his cellmate was threatening him with bodily harm. Defendants allege that Muhammad only conveyed that he and his cellmate did not get along. Because there is a dispute over whether the defendants knew that Muhammad was at substantial risk of serious harm, the undersigned finds that this matter cannot be resolved on defendants' motion for summary judgment. Accordingly, the undersigned recommends that defendants' motion for summary judgment be denied in part as it relates to Muhammad's failure to protect claim against defendants Cochrane, Greer, Cheeks, and Fusion, and this matter be set for a jury trial as to those defendants.

With regard to Muhammad's failure to protect claim against defendants Johnson, Watson, Harvey, Combs, and Collins, Muhammad does not allege that any of these defendants had knowledge that he was at substantial risk of serious harm. Therefore, the undersigned finds that Muhammad's failure to protect claim against these defendants fails and, thus, recommends that defendants' motion for summary judgment as to this claim be granted in part as it relates to defendants Johnson, Watson, Harvey, Combs, and Collins.

### III. Religious Exercise- NOI Services and Newspaper

Muhammad alleges that the defendants violated his right to free exercise of religion by denying him attendance at large-group NOI services in the gym and by denying him several issues of The Final Call newspaper. The undersigned finds that Muhammad has not demonstrated a constitutional violation and, therefore, recommends that defendants' motion for summary judgment be granted as to these claims.

7

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I.; see also Cruz v. Beto, 405 U.S. 319, 322 (1977). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show (1) that he holds a sincere belief that is religious in nature and (2) that prison regulations impose a substantial burden on his right to free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987). A "substantial burden" is one that "put[s] 'substantial pressure on an adherent to modify his behavior and violate his beliefs,' or one that forces an individual to 'choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand.'" Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quoting Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981), and Sherbert v. Verner, 374 U.S. 398, 404 (1963)). However, inmates' constitutional rights must be evaluated within the context of their incarceration, and the Supreme Court has long cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration." Procunier v. Martinez, 416 U.S. 396, 405 (1974). Accordingly, courts must afford deference to prison officials in their oversight and coordination of the prison and its many aspects, and this deference is achieved in part through the application of a reasonableness test that is less restrictive than the test ordinarily used to evaluate alleged infringements of fundamental constitutional rights. O'Lone, 482 U.S. at 349 (1987); Turner v. Safley, 482 U.S. 78, 84 (1987).

If the inmate establishes a substantial burden on his sincerely held religious belief, the next inquiry is whether the prison regulation is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89. Factors relevant in determining reasonableness of a regulation

8

include (1) the connection between the regulation and a legitimate, neutral government purpose, (2) the existence of alternative means of exercising the right, (3) the impact accommodation of the right would have on guards, other inmates, and prison resources, and (4) the absence of ready alternatives to the regulation. Id. at 89-91. In weighing these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). The prisoner carries the burden of proof under the Turner analysis to disprove the validity of the prison regulation at issue. Overton v. Bazzetta, 539 U.S. 126 (2003).

Muhammad alleges that he was denied large-group NOI services in the gym at WRSP. He concedes, however, that NOI members are allowed to meet in smaller groups within their pods. Assuming that Muhammad holds a sincere religious belief, the undersigned finds that he has not demonstrated that being denied larger group meetings in the gym has placed a substantial burden on his right to free exercise of religion. Muhammad can continue to exercise his religion in smaller groups within his pod and by himself. Accordingly, the undersigned finds that Muhammad has not demonstrated a denial of his First Amendment right to free exercise of religion.

Moreover, even if Muhammad could show a denial of his right to free exercise, his claim nevertheless fails because he has not demonstrated that denial of group NOI services in the gym is not related to a legitimate penological interest. Group NOI services in the gym were allowed at WRSP for a period of time until the defendants determined that gang activity was occurring at the meetings. Because the VDOC and WRSP have a zero tolerance policy for gangs and gang-related activity, the defendants discontinued the NOI services held in the gym. Clearly the regulation and prohibition of gang activity is a legitimate penological concern related to security. See Hodges v. Virginia, 871 F.Supp. 873, 876 (W.D.Va. 1994), rev'd on other grounds,

Montcalm Publ. Corp. v. Beck, 80 F.3d 105 (4th Cir. 1996) (finding that security, discipline, order, public safety, and rehabilitation interests need no defense). Further, Muhammad has alternative means of practicing his religion, through smaller group services in his pod and by himself. To allow the NOI group services to take place in the gym despite the gang-related activity would place a burden on the defendants to increase the staff available to provide security during the meetings as well as place other inmates in danger of being subjected to gang activity. Accordingly, the undersigned recommends that Muhammad's First Amendment claim concerning group NOI services be dismissed and defendants' motion for summary judgment be granted as to this claim.

Muhammad also claims that the defendants violated his First Amendment right to free exercise of religion when they denied him several issues of The Final Call newspaper. The undersigned finds that Muhammad has not demonstrated that denial of the newspaper was a substantial burden on his free exercise of religion. Muhammad has not even alleged how the newspaper is essential to his practice of religion. Further, the court notes that all of the issues of the newspaper which were previously denied to Muhammad have now been removed from the disapproved publication list in light of the VDOC's fairly recently amended publication review standards. According to defendants, all of the publications which were previously denied are now deemed acceptable. Therefore, the undersigned recommends that Muhammad's First Amendment claim concerning The Final Call newspaper be dismissed and defendants' motion for summary judgment be granted as to this claim.

## IV. Equal Protection

Muhammad alleges that the defendants treat him, as a member of the NOI, differently than inmates of other religions. In support of his claim, Muhammad alleges that the defendants

10

allow all religious groups, except the NOI, to hold large group meetings in the institution's gym. The undersigned finds that Muhammad's allegations fail to demonstrate a constitutional violation and, therefore, recommends that this claim be dismissed.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause affords that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1982). To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination;" once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977) (requiring proof of racially discriminatory intent or purpose to show an equal protection violation); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Moreover, because of the heightened deference due to administrators in the prison context, a prison administrator's conduct that impinges upon an inmate's constitutional rights is valid as long as it is reasonably related to legitimate penological interests and is not an exaggerated response to a particular concern, even where the constitutional right allegedly infringed would otherwise warrant strict scrutiny review. Morrison, 239 F.3d at 654-55. To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003). Mere conclusory allegations of discrimination are insufficient to state a claim. Spaulding v. Dixon, et al., No. 90-

11

7315, 1990 U.S. App. LEXIS 15560, *2 (4th Cir. Sept. 4, 1990); Chapman v. Reynolds, 378 F. Supp. 1137, 1139 (W.D. Va. July 12, 1974).

While Muhammad does allege that, as a member of the NOI, he is treated differently from prisoners of other religions, he does not allege that these other prisoners' religious services were also determined to be a security risk and that they are nevertheless still allowed to meet in large groups in the gym. Therefore, the undersigned finds that Muhammad has not reasonably demonstrated that he was similarly situated to those prisoners. Further, Muhammad does not demonstrate that the alleged unequal treatment was the result of intentional or purposeful discrimination. Accordingly, the undersigned finds that Muhammad's allegations fail to rise to the level of a constitutional violation and, therefore, recommends that his claim be dismissed.

Moreover, even if Muhammad's allegations demonstrated that the defendants impinged on his constitutional rights, he still cannot show that the disparity in treatment was not justified under a rational basis standard of scrutiny. "[W]hile a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, claims under the equal protection clause. . . must be analyzed in light of the special security and management concerns in the prison system." Morrison, 239 F.3d at 655. Defendants state that the large group NOI services were discontinued because of security concerns. Clearly, prison safety and security are legitimate penological interests. In light of the facts that Muhammad can still meet with other NOI inmates in smaller groups in his pod and practice his religion on his own, the undersigned finds that the defendants' decision to discontinue the large group meetings in the gym is not an exaggerated response. Accordingly, the undersigned finds that Muhammad has not demonstrated a constitutional violation and, therefore, recommends that defendants motion for summary judgment be granted as to this claim.

12

## V. Qualified Immunity

Muhammad names the defendants in their personal capacities,[3] and the defendants assert the defense of qualified immunity. The undersigned finds that the defendants are entitled to qualified immunity as to Muhammad's claims for damages with regard to his claims that the defendants violated his rights to free exercise of religion and equal protection as well as to Muhammad's failure to protect claim against defendants Johnson, Watson, Harvey, Combs, and Collins. However, the undersigned finds that defendants Cochrane, Greer, Cheeks, and Fusion are not entitled to qualified immunity as to Muhammad's claim that they failed to protect him.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields a government official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Qualified immunity is an immunity from suit rather than a mere defense to liability. Thus, whether or not a defendant is entitled to qualified immunity is a question of law for the court, and when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. Willingham v. Crooke, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.") (citing Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003)).

---

[3] To the extent Muhammad sues the defendants in their official capacities for damages, neither a state nor its officials acting in their official capacities are "persons" for purposes of § 1983 damages actions and they are entitled to sovereign immunity. Sossamon v. Texas, 131 S. Ct. 1651, 1663 (2011); Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71, n.10 (1989).

13

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

As discussed above, Muhammad has failed to present sufficient evidence to support his claims that the defendants violated his rights to free exercise of religion and to equal protection, or that defendants Johnson, Watson, Harvey, Combs, and Collins failed to protect him in violation of the Eighth Amendment. Accordingly, the undersigned finds that these defendants, in their personal capacities, are entitled to qualified immunity from suit as to these claims and, therefore, recommends that defendants' motion for summary judgment be granted in part.

However, because disputes of material facts exist as to Muhammad's claim that defendants Cochrane, Greer, Cheeks, and Fusion failed to protect him, the undersigned finds that these defendants are not entitled to qualified immunity as a matter of law at this stage of the proceedings.

### VI. Defendants Johnson, Combs, and Young

Muhammad names Johnson, Combs, and Young as defendants to this action; however, he provides no facts to indicate that any of these defendants were personally involved in any of his

14

alleged constitutional violations. A plaintiff must affirmatively show that a defendant acted personally in the deprivation of his or her constitutional rights. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). When a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. See Karafiat v. O'Mally, 54 F. App'x 192, (6th Cir. 2002); Lucas v. Ruth, C/A No. 1:10-2456-TLW-SVH, 2011 U.S. Dist. LEXIS 51384, 2011 WL 1831754 at *3 (D.S.C. Feb. 15, 2011). Although the court must liberally construe the *pro se* complaint, a plaintiff must do more than make mere conclusory statements to state a claim. See Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994); White v. White, 886 F.2d 721, 723 (4th Cir. 1989). A plaintiff must allege facts that support a claim for relief. Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Muhammad's complaint's contains no facts to demonstrate that defendants Johnson, Combs, and Young personally violated Muhammad's constitutional rights and, thus, is insufficient to state a claim under § 1983. Accordingly, the undersigned recommends that any claims against these defendants be dismissed.

## VII.

Based on the foregoing, the undersigned finds that Muhammad's allegations regarding violations of his rights to free exercise of religion and equal protection do not establish a constitutional violation and that his allegations that defendants Johnson, Watson, Harvey, Combs, and Collins failed to protect him also do not establish a constitutional violation, but that a dispute of material facts exist as to Muhammad's claim that defendants Cochrane, Greer, Cheeks, and Fusion failed to protect him. Accordingly, the court **RECOMMENDS** that defendants' motion for summary judgment (Docket No. 43) be **GRANTED in part** as to Muhammad's religious exercise and equal protection claims and failure to protect claims against defendants Johnson, Watson, Harvey, Combs, and Collins and **DENIED in part** as to

15

Muhammad's failure to protect claim against defendants Cochrane, Greer, Cheeks, and Fusion. The undersigned **RECOMMENDS** that this matter be set for a jury trial on Muhammad's claims that defendants Cochrane, Greer, Cheeks, and Fusion failed to protect him. The undersigned also **RECOMMENDS** that all other defendants be **TERMINATED** as defendants to this action.

The Clerk of the Court is **DIRECTED** immediately to **TRANSMIT** the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send copies of this Report and Recommendation to plaintiff and counsel of record for defendants.

            **Entered: December 20, 2011**

            */s/ Robert S. Ballou*

            **Robert S. Ballou**
            **United States Magistrate Judge**